UNION SCREW COMPANY *vs.* AMERICAN SCREW COMPANY.

By a sealed instrument dated March 28, 1867, the complainant and respondent, both corporations, agreed, the complainant to sell and the respondent to buy part of the complainant's property, payment to be made at the option of the complainant either in cash or in shares of the respondent's capital stock at their value on that day, the value of the property and of the shares to be determined by referees, whose award was to be made within six months, and the transfer and payment to be made within ten days after the award. The award was made September 26, and the complainant chose to be paid in stock.

The respondent, between March 28, and October 6, which was the tenth day after September 26, made four dividends. The respondent after the award issued under its charter new stock, with which payment·was made to the complainant.

The complainant thereafter filed a bill against the respondent, charging that payment should have been made in shares previously existing, and not in newly issued stock, and claiming a right to the profits and increment of the respondent's capital stock between March 28 and the day of payment: —

*Held,* that the complainant was not entitled to relief.

The actual payment and transfer was made November 9. The respondent subsequent to October 6, and before November 9, declared one dividend: —

*Held,* that as to this dividend the complainant was entitled to relief in a sum to be fixed by a master if not agreed on by the parties.

BILL IN EQUITY. The facts are stated in the opinion of the court.

*C. S. & C. Bradley*, for complainant, cited: *Pooley* v. *Budd*, 14 Beav. 34; *Shaw* v. *Foster*, L. R. 5 H. L. 321; Adams Eq. *91; Story Eq. Juris. § 779; Fry on Specif. Perform. § 795; *Waters* v. *Travis*, 9 Johns. Rep. 450; *Milligan* v. *Cooke*, 16 Ves. Jun. 1; *King* v. *Wilson*, 6 Beav. 1; *Bouvier* v. *Stonestreet*, 6 Md. 418; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 273; *Phillips* v. *Thompson*, 1 Johns. Ch. 131; *King* v. *Thompson*, 9 Pet. 204; *Pingree* v. *Coffin*, 12 Gray, 288, 305; *Andrews* v. *Brown*, 3 Cush. 130; *Peabody* v. *Tarbell*, 2 Cush. 226; *Erwin* v. *Myers*, 46 Pa. St. 96; *Hooper* v. *Smart*, L. R. 18 Eq. 683; *Barnes* v. *Wood*, L. R. 8 Eq. 424; *Rider* v. *Gray*, 10 Md. 300.

*James Tillinghast*, for respondent.

*July* 14, 1877. DURFEE, C. J. On the 28th day of March, 1867, the plaintiff and defendant corporations entered into an agreement under seal, by which the plaintiff agreed to sell and convey to the defendant a portion of its corporate property, for a price to be determined by arbitrators, and to be paid by the defendant either in cash or in shares of its capital stock, or partly in cash and partly in its stock, according to the election of the plaintiff, to be made within ten days after the award of the arbitrators, — the payment, if made in shares, to be made in shares at their value on the 28th March, 1867, their value upon that day being required to be determined by the arbitrators for the purpose of such payment. By the terms of the agreement the award was to be made within six months, and the agreement was to be carried into full effect, by appropriate transfers and payments, within ten days after the award. The agreement contained a stipulation by the plaintiff to discontinue and refrain from all opposition to the extension of the Harvey patents, so called, which was duly kept and fulfilled. It provided that the plaintiff should have the use of its property in its manufacturing business until within six days of the making of the award, but contained no provision with reference to the use of the defendant's property. The arbitrators made their award September 26, 1867, and thereby determined the price of the property agreed to be sold to be $161,510, and the value of a share in the capital stock of the defendant corporation on the 28th March, 1867, to be $500. The plaintiff elected, within ten days after the award, to receive payment in stock, and on the 9th Novem-

ber, 1867, — not within ten days after the award, as stipulated in the agreement, — the plaintiff conveyed the property to the defendant, and the defendant delivered to the plaintiff a certificate of three hundred and twenty-three shares of its capital stock in payment for the same. The three hundred and twenty-three shares so delivered were new shares, issued by the defendant under its charter, after the award, for the purpose of making the payment, the defendant having no shares of its own. And it appears that between March 28 and November 9, 1867, the defendant made, in the usual course of its business, five dividends, each of ten dollars per share, to its then stockholders, one of these dividends being declared more than ten days after the award, to wit, on the 7th day of October, 1867, and not paid until still later, to wit, on the 14th day of October, 1867. The plaintiff complains of these acts. It contends that it was entitled to be paid in previously existing shares, instead of shares newly issued for the purpose, and that it was entitled to whatever profit or increment accrued to the shares between the 28th March, 1867, and the day of the payment. It brings this suit for relief in these two particulars.

The first question is, Was the defendant entitled to pay the plaintiff in shares newly issued for the purpose? We think it was. The plaintiff could not have supposed the defendant had the shares on hand, for a corporation is seldom a shareholder in its own stock. The defendant was obliged either to buy the shares or to issue them. It could have been of no advantage to the plaintiff to have had the defendant buy the shares, unless the defendant could have bought them at less than their intrinsic value; for, in order to buy them, the defendant would have had to use either its funds or its credit, and, therefore, would have had to reduce or charge the value of its capital to the extent of what it would have had to pay for them, and, the plaintiff becoming a stockholder, would have shared the depreciation with the other stockholders. It is not alleged, and it cannot be presumed, that the defendant could have bought so large a number of shares without so far enhancing the price as to bring the cost above their intrinsic value. The defendant received, for the stock newly issued, property of the same estimated value. It did not water its stock. The plaintiff, therefore, was not injured,

unless the other stockholders were injured, by the transaction. The probability is, that it was the best thing for all concerned. At any rate it was a matter of business policy or judgment for the corporation, with which, in the absence of fraud or dishonesty, we see no reason for interfering.

The second question is, Had the defendant the right to make dividends between March 28 and November 9, 1867 ? The plaintiff claims that after the agreement it was in equity the owner of the shares which it afterwards elected to take, the defendant being a trustee for it, and that therefore the dividends ought to have been withheld for it to participate in them. The claim rests on the maxim that equity considers as done what is agreed to be done. The maxim, however, is not to be taken so absolutely. The meaning of the maxim is explained by Story, who says: "All agreements are considered as performed, which are made for a valuable consideration, in favor of persons entitled to insist upon their performance. They are to be considered as done at the time when, according to the tenor thereof, they ought to have been performed." Story's Eq. Juris. § 64 *g*. In the case at bar, the agreement was not to be performed until after the award, and therefore the plaintiff is not to be considered as owner, so as to be entitled to dividends, until after the award.

We find nothing in the agreement itself or in the testimony to controvert this conclusion. The property under the agreement was to be transferred within ten days after the award, and was then to be paid for, either in cash or in stock, as the plaintiff should elect. If the plaintiff had elected cash, it will not be contended that the defendant could have been required to pay more than the price fixed by the arbitrators, to wit, $161,510. The plaintiff elected not cash but stock. If the plaintiff took stock it was to take it at the value which it had March 28, 1867, to wit, $500 per share. The plaintiff then was entitled to as many shares as, at $500 per share, would amount to $161,510. The stock was to be taken as having the value which it had March 28, 1867, but it was to be taken or paid after the award, and clearly as of that time, not as of March 28, 1867. The agreement, even as thus construed, strongly favored the plaintiff: for if the stock fell, it could get its full pay by taking cash ; if the stock rose, it could get more than its full pay by taking stock;

if the stock neither fell nor rose, it would take either cash or stock, or both, as its judgment dictated. Can it be supposed that the plaintiff was to have still another and greater advantage? It is in proof that the defendant made ten dividends in 1865, and nine in 1866, each at the rate of ten dollars per share. It is incredible, in view of this proof, that it was intended that the profits should accumulate for the benefit of the plaintiff. And we repeat, we find nothing in the agreement itself which requires it. Certainly it is not required, merely because the plaintiff agreed to refrain, and did *immediately* refrain, from opposing the extension of the Harvey patents, nor because the plaintiff *expressly* stipulated for the use of its property pending the arbitration. Our conclusion is, that the dividends made prior to the expiration of ten days after the award, and prior to the plaintiff's electing to be paid in stock, were made lawfully and not in fraud of the agreement, and that the defendant is not accountable for them to the plaintiff.

There is one dividend remaining to be considered. The date of the award was September 26, 1867; the 10th day after it was October 6, 1867. The agreement, by its terms, ought to have been performed upon or prior to that day. The performance, for some reason, presumably satisfactory to both parties, was deferred until November 9, 1867. Now, during this interval, after the plaintiff had elected to be paid in stock, a dividend was declared and paid; declared October 6, 1867, and paid October 14, 1867. Why this was done is not explained, except by the general statement that the dividends were made in the usual course of business. The defendant, however, made its dividends at irregular intervals; and even if the dividend was in the usual course, we nevertheless think it should have been postponed, or, if made, that the defendant, considering itself as trustee for the plaintiff, should have reserved for it its proportion. We therefore think the plaintiff is entitled to relief in this particular, and unless the parties can agree upon the sum which the plaintiff is entitled to, the cause should be sent to a master to have it determined.